(*Circuit Court of Cook County.*)

### Little, for use of Hartwell

#### vs.

### Bryan Lathrop.

(1899.)

1. CONSTITUTIONAL LAW—GARNISHMENT ACT OF 1897—WHETHER LIBERAL EXEMPTION LAW. It is for the legislature to determine what constitutes a liberal exemption law.

2. GARNISHMENT—NECESSITY OF PRIOR DEMAND. No proceedings in garnishment can be instituted against a wage earner who is the head of a family, unless a demand is first made in writing for the excess over the amount exempt. This is a condition precedent to obtaining a judgment.

3. SAME—WAGES NOT DUE AT TIME OF SERVICE OF WRIT. Wages earned or coming due after the service of the writ of garnishment are not subject to the writ. It is against the policy of the law to allow a creditor to sue his debtor to the extent that he must work for the benefit of the creditor.

4. SAME—RIGHT OF EMPLOYER TO PAY EMPLOYEE IN ADVANCE TO AVOID GARNISHMENT. It is perfectly competent for an employer to pay his employee his wages in advance and such wages cannot be garnished.

Appeal by defendant from a judgment entered against him as garnishee before Justice of the Peace George H. Woods, for a debt of $200 that one Charles Hartwell claimed was due him from A. D. Little, an employee of defendant. The evidence disclosed that defendant paid Little's monthly salary in advance and at the time the writ was served nothing was owing.

The case was submitted to the court without a jury.

*Asa G. & Elmer Adams,* attorneys for plaintiff.

*Willard & More,* attorneys for defendant.

TULEY, J. (orally) :—

The first question here is as to the effect of what is known as the Case garnishment act. The law as it stood at the time that act was passed, in 1897,[1] as I understand it, was as follows: "The wages and services of a defendant being the head of a family, and residing with the same, to an amount not exceeding fifty dollars, shall be exempt from garnishment. In case the wages or services of such defendant in the hands of a garnishee shall exceed fifty dollars, judgment shall be given only for the balance above that amount" (section 111, ch. 79, Ill. Stat.). The point is made that the act of 1897 (section 14, ch. 62, Ill. Stat.[1]) is unconstitutional in that it is not a liberal exemption law. I shall not pass on that fur-

1 Laws of 1897, p. 231.—Ed.

ther than to say that my first impression would be that it was for the legislature to determine what was, and what was not a liberal exemption law; and that the intention of the legislature by the passage of this act of 1897, was to comply with the provision of the constitution requiring the passage of liberal exemption laws.

The question is, What is the true construction of that law in the case of a garnishment of the wages of a person, who is the head of a family? As to wages, the exemption law provides that the wages of a person who is the head of a family and is residing with same, to the amount of eight dollars per week shall be exempt from garnishment, all above the sum of eight dollars per week shall be liable to garnishment. If that section stood alone, without the proviso, it would be substantially the act as to exemption of wages which was in force theretofore, which exempted a lump sum of fifty dollars, and made all above that liable to garnishment, this one providing that instead of fifty dollars in one sum, there shall be eight dollars a week. Now comes the proviso, ''Provided the person bringing suit shall first make a demand in writing for the excess above the amount herein exempted.'' That proviso makes a condition precedent to *any* garnishment of wages of a defendant who is the head of a family, having any effect. Unless that condition precedent is complied with, there can be no judgment for wages, even for the amount over and above eight dollars per week. Instead of that law being hard upon the head of a family, possibly more so than the exemption of fifty dollars, a lump sum, it is in the view I take of it, and as applied to this case more liberal to the defendant because it requires the performance of a condition precedent to the garnishing of any portion of a man's wages. In other words, if there is no demand made there can be no garnishing of wages under this act. The person bringing suit shall, first, make a demand in writing for the excess of the amount thus exempted, and unless that demand be made, that law is not complied with. It was intended to supercede the old law, so now there can be no garnishment of wages unless demand is first made for the balance over and

above eight dollars per week. There having been none in this case, there can be no garnishment of this man's wages, who is the head of a family in this city.

But even supposing the court is wrong in that matter, the broad question arises whether, under the law as it now stands, any wages coming due for services or work performed after the service of the garnishment process, can be garnisheed. The revision act concerning justices of the peace, the act of 1895, has revised all of the proceedings before justices of the peace in one act, including proceedings in garnishment, both upon attachment and execution. Section 1, art. 9, ch. 79, Rev. Stat. 1895, provides as follows: "Whenever an execution, issued on a judgment rendered by a justice of a peace shall be returned by the proper officer 'no property found,' on the affidavit of the plaintiff or other credible person filed with the justice of the peace that the defendant in the execution has no property within the knowledge of such affiant, in his possession, liable to execution, and that such affiant has just reason to believe that any other person is indebted to such defendant, or has any effects or personal estate of such defendant in his possession, custody or charge, such justice of the peace shall issue an execution against the person supposed to be indebted to or supposed to have any effects or personal estate of such defendant, commanding him to appear before some justice as garnishee, and such justice of the peace shall examine and proceed against such garnishee in the same manner as is required by law against garnishees in original attachments." Now, how was he to proceed in the original attachment? In an original attachment the summons to the garnishee was contained in the writ of attachment that was issued against the property of the debtor, and on the return of that summons the justice is required to proceed and determine the cause.

I read from section 3 (art. 9, ch. 79): "It shall not be necessary to exhibit or file interrogatories in writing, but the garnishee may be examined orally touching the personal estate, goods, chattels, moneys, choses in action, credits and effects of the defendant in execution, and the amount and

value thereof in his possession, custody or charge, and from him due and owing to such defendant at the time of the service of such summons, or of any writ of attachment." Now, what is the inquiry to be made? The amount due at the time of the service of the summons, clearly. All the garnishee is required to answer, is as to the amount due the debtor at the time of the service of the summons.

Section 4 (art. 9, ch. 79.) reads as follows: "When the plaintiff in any garnishee proceeding shall allege that any garnishee served with process, or appearing before a justice of the peace, has not truly discovered the personal effects of the defendant, and the value thereof, in his possession, custody or charge, or from him due and owing to the defendant, at or after the time of the service of the writ, or which shall or may thereafter become due, the justice of the peace shall immediately (unless the case be for good cause continued) proceed to try such cause, as against such garnishee, without the formality of pleading. The trial shall be conducted as other trials before justices of the peace, and if the finding or verdict shall be against the garnishee, judgment shall be given against him in the same manner as if the facts had been admitted by him, with all costs of such trial. If the finding shall be in favor of the garnishee, he shall recover his costs against the plaintiff. And in case the garnishee admits indebtedness to the judgment debtor, he shall not be liable for costs." Now, was the justice of the peace to give judgment upon that investigation, for anything excepting that provided for in section 3, the amount from him due and owing at the time of the service of the summons, or, is he to go on and inquire whether anything has become due since the service of the summons, and if so to give judgment therefor? The law does not say expressly that he shall give judgment for what shall be served and become owing after the service of the writ, otherwise than by implication.

The court then, in order to hold that judgment might go for after-accruing wages (by "after" I mean "after the service of the summons"), must hold that such a judgment was intended by implication from the provisions of section 4,

art. 9.   It seems to me that the court would not be authorized
by any language short of an express provision in saying that
judgment should be rendered for any amount that might be
found owing to the debtor from the garnishee at the time of
the examination.   In other words, the court is not going to
assume that the legislature intended to garnishee a man's
wages before they are earned, to give the creditor a mortgage
on the debtor's labor; the court cannot make any such in-
tendment.

What is a garnishee?   It is an attachment; it is a seizure
—it is a conveying into possession.   Of what?   You cannot
take into possession what does not exist.   It is a taking into
possession of a debt, just as a writ of attachment takes hold
of chattels, real estate or personal property.   The garnishee
process is a taking hold, by a writ of the existing debt, and
that is all you can take hold of; you cannot take hold of what
does not exist.   You cannot put your hand on what does not
exist.   If you cannot seize by attachment what does not ex-
ist, you certainly cannot seize by garnishee process, which
is nothing more than a theoretical seizure, what does not
exist.

To my view, it is against the policy of the law to allow a
creditor to pursue his debtor to the extent that instead of
working to support himself and family, he must work for the
benefit of the creditor.   The only object of an exemption law
is to save the debtor and his family from the exactions of his
creditors, and it is against the policy of that law to say that
a creditor can acquire any kind of a lien, any kind of a mort-
gage, legal or equitable, upon the future labor of his debtor.
Whether the law is such a law as was contemplated by the
constitution in requiring the legislature to pass liberal ex-
emption laws, is a very serious question.   My opinion is, that
the proper construction of this act, in regard to the garnish-
ment of wages, must be that it only applies to wages due at
the time of the service of the writ upon the garnishee.   It
cannot apply to any other wages.   It may apply to wages al-
ready earned and thereafter to be paid, but it cannot apply
to unearned wages to be contracted for or to be earned in

future, and paid in the future. To permit a garnishment for money to be paid for services or work to be done in the future, would be to establish the penal system of slavery.

The decision of Judge Moran, in *C. & E. I. R. R. Co. v. Blayden*, 33 Ill. App. 254, and the decision of Judge Adams in *Davis v. Siegel, Cooper & Co.*, 80 Ill. App. 278, referred to, are both very clearly to the point. Judge Moran cites *Alexander v. Pollock*, 72 Ala. 137,[1] and other authorities which are very clear to the effect that it is perfectly competent for a contract to be made between the employer and the employee, that his wages shall be paid in advance of their being earned, and that such a contract is a valid contract, and that such wages cannot be garnisheed.

Now, in the case at bar, if there was such a contract, it is valid, but whether there was a contract or not, the garnishee testifies that he voluntarily paid the debtor's wages monthly in advance. Had he not a right to do so? The money was his own. If he chose to trust the employee to work for him and run the risk of the loss of the wages, that was his business, and if he has paid him, why should he pay it twice? He had already paid the wages for May, he paid the wages for June in advance, did it voluntarily, and had a perfect right to do it. At the time of the service of the writ, he owed nothing to this defendant. It was not then known that he ever would owe him anything. I take it, that the presumption must be that the contract of employment between Mr. Lathrop and his employees was from month to month, presumably at will, so far as is shown, and *non constat*, there may never have been a dollar earned in June, the party may have been discharged or quit of his own voluntary motion. I see nothing in the law that prohibits the making of such a contract. If the contract for wages is from month to month, or from day to day, every month is a new contract, and every day is a new contract for wages.

It may be this will hinder the creditors somewhat in the col-

---

[1] Cited in 78 Ala. 525; 88 Ala. 254, 7 So. 53; 111 Ala. 537, 20 So. 368; 124 Ala. 414, 26 So. 907, 82 Am. St. Rep. 183. See 24 Cent. Dig. Garnishment, sec. 55.—Ed.

lection of their debts, but the constitution says that if cred-itors are not merciful, the legislature will pass laws by which they will become merciful and not be able to force their claims to the injury of the debtor's family. In my opinion, the makers of the constitution never intended to give the general assembly the power to pass a law by which a man should have, in any way whatever, a mortgage upon the wages of another man to be earned in the future.

The finding on the first proposition of law from the evidence introduced in the case will be for the defendant.

The judgment will go for the defendant, and that the garnishee be discharged with his costs.